# United States Court of Appeals for the Federal Circuit

---

**MAVERICK TUBE CORPORATION, BOOMERANG TUBE LLC, ENERGEX TUBE, TEJAS TUBULAR PRODUCTS, TMK IPSCO, VALLOUREC STAR, L.P., WELDED TUBE USA INC.,**
*Plaintiffs*

**UNITED STATES STEEL CORPORATION,**
*Plaintiff-Appellee*

**v.**

**TOSCELIK PROFIL VE SAC ENDUSTRISI A.S., CAYIROVA BORU SANAYI VE TICARET A.S.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**BORUSAN ISTIKBAL TICARET, BORUSAN MANNESMANN BORU SANAYI VE TICARET A.S.,**
*Defendants*

---

2016-2330

---

Appeal from the United States Court of International Trade in Nos. 1:14-cv-00234-JAR, 1:14-cv-00244-JAR, 1:14-cv-00262-JAR, Senior Judge Jane A. Restani.

---

Decided: July 3, 2017

————————————

JONATHAN GORDON COOPER, Quinn Emanuel Urquhart & Sullivan, LLP, Washington, DC, argued for plaintiff-appellee. Also represented by DEBBIE LEILANI SHON, JON DAVID COREY, KELSEY RULE, PHILIP CHARLES STERNHELL.

DAVID L. SIMON, Law Offices of David L. Simon, Washington, DC, argued for plaintiffs-appellants. Also represented by MARK B. LEHNARDT, Antidumping Defense Group, LLC, Washington, DC.

HARDEEP KAUR JOSAN, International Trade Field Office, United States Department of Justice, New York, NY, argued for defendant-appellee United States. Also represented by BENJAMIN C. MIZER, JEANNE E. DAVIDSON, CLAUDIA BURKE; JESSICA M. LINK, Office of Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

————————————

Before PROST, *Chief Judge,* LOURIE and STOLL, *Circuit Judges.*

PROST, *Chief Judge.*

Appellants, Toscelik Profil ve Sac Endüstrisi A.S., and Çayirova Boru Sanayi ve Ticaret A.S. (collectively, "Çayirova"), appeal from the final judgment of the United States Court of International Trade ("Trade Court") sustaining Commerce's decision that Çayirova is not entitled to a duty drawback adjustment for its exports of

oil country tubular goods[1].  *See Maverick Tube Corp. v. United States*, 163 F. Supp. 3d 1345 (Ct. Int'l Trade 2016). Because Commerce properly interpreted and applied the Tariff Act to deny Çayirova's duty drawback adjustment, we affirm.

I

A

This case involves an antidumping investigation by Commerce into Turkish oil country tubular goods.[2] "Dumping occurs when a foreign firm sells goods in the United States at an export price . . . that is lower than the product's normal value." *Saha Thai Steel Pipe (Public) Co. v. United States*, 635 F.3d 1335, 1338 (Fed. Cir. 2011). For exporters in non-distorted market economies, the normal value is generally the "price at which the foreign . . . product is first sold . . . for consumption in the exporting country." 19 U.S.C. § 1677b(a)(1)(B)(i). "[T]he amount by which the [normal value] exceeds [export price] is the dumping margin." *Id.* A higher export price thus yields a lower dumping margin.

When calculating the dumping margin,

if a foreign country would normally impose an import duty on an input used to manufacture the

---

[1]    Oil country tubular goods are "hollow steel products of circular cross-section, including oil well casing and tubing" used in the recovery of oil and gas from the ground.  78 Fed. Reg. 45505-01.

[2]    *See Certain Oil Country Tubular Goods From India, The Republic Of Korea, The Republic Of The Philippines, Saudi Arabia, Taiwan, Thailand, The Republic Of Turkey, Ukraine, And The Socialist Republic Of Vietnam: Initiation Of Antidumping Duty Investigations*, 78 Fed. Reg. 45,506 (Dep't Commerce July 29, 2013).

subject merchandise, but offers a rebate or exemption from the duty if the input is exported to the United States, then Commerce will increase [the export price] to account for the rebated or unpaid import duty (the 'duty drawback').

*Saha Thai*, 635 F.3d at 1338; *see* 19 U.S.C. § 1677a(c)(1)(B) (providing that the export price "shall be . . . increased by . . . the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States"). This adjustment of the export price is called a "duty drawback adjustment." "The purpose of the duty drawback adjustment is to account for the fact that the producers remain subject to the import duty when they sell the subject merchandise domestically, which increases home market sales prices and thereby increases [the normal value]." *Saha Thai*, 635 F.3d at 1338. Thus, by increasing the export price, a duty drawback adjustment reduces the dumping margin.

## B

Here, Appellant Çayirova produces various types of steel pipes from different grades of hot-rolled steel coils. The particular pipes at issue here, oil country tubular goods, may only be produced from a grade of coil known as J55. During Commerce's period of investigation, Çayirova imported various grades of coils but did not import any J55 coils. Instead, Çayirova sourced all its J55 coils from a domestic Turkish producer.

Normally, Çayirova would have to pay an import duty on its imported non-J55 coils. Turkey, however, has a duty drawback regime that relieves importers of import duties if their imported goods are incorporated into exports of finished products. This drawback regime includes a provision for "equivalent goods," whereby similar products may be substituted for each other for drawback

purposes.  J.A. 1405–24.  Under this regime, a Turkish importer may import goods into Turkey duty-free so long as the importer exports a sufficient volume of finished goods incorporating either the imported or equivalent goods.  *Id.*  The Government of Turkey considers Çayirova's imported coils to be "equivalent" to Çayirova's domestically-acquired J55 coils.  During Commerce's period of investigation, Çayirova exported oil country tubular goods that were made using domestic J55 coils to the United States.  Çayirova then used all of its exports of oil country tubular goods to the United States to receive duty drawbacks on its imported non-J55 coils from the Government of Turkey.

On appeal, Çayirova argues that because it received the duty drawbacks on its non-J55 coils solely "by reason of the exportation of the [oil country tubular goods] to the United States," 19 U.S.C. § 1677a(c)(1)(B), Commerce should have offset Çayirova's export price by the duty drawback.  Commerce, however, determined that Çayirova was not entitled to a duty drawback adjustment because none of the goods for which duties were exempted, i.e., the non-J55 coils, were capable of being used to produce Çayirova's oil country tubular goods.  The Trade Court affirmed Commerce's decision and Çayirova appealed.  On appeal, Çayirova argues that Commerce misconstrued § 1677a(c)(1)(B) of the Tariff Act and that under the provision's correct interpretation, Çayirova is entitled to a duty drawback adjustment.  We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II

In reviewing the Trade Court's decision to affirm Commerce's final determination, we "uphold Commerce's determination unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'"  *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997) (quoting 19 U.S.C.

§ 1516a(b)(1)(B)(i)).   "We review de novo whether Commerce's interpretation of a governing statutory provision is in accordance with law, but we do so within the framework established by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)." *Agro Dutch Indus., Ltd. v. United States*, 508 F.3d 1024, 1029–30 (Fed. Cir. 2007).

> Under 19 U.S.C. § 1677a(c)(1)(B),
>
> The price used to establish export price and constructed export price shall be--
>
> (1) increased by--
>
>> . . .
>>
>> (B) the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States.

Commerce determined that as a threshold matter, § 1677a(c)(1)(B) did not apply to this investigation because none of Çayirova's exempted coils were capable of being used as inputs for the oil country tubular goods. According to Commerce, a duty drawback adjustment is not available when the exempted goods could not be used as inputs to produce the subject merchandise. *See* J.A. 50 ("[W]e find that the duty drawback provision is not intended to account for such situations in which the input for which a company claims duty drawback could not have been used in the production of the subject merchandise.").

Çayirova argues that Commerce's "threshold test" has no basis in law and that this court should reject it. According to Çayirova, the plain and unambiguous language of § 1677a(c)(1)(B) precludes the imposition of a threshold test. Çayirova contends that this provision is "straight-forward" and that under the statute, if a respondent

exports subject merchandise to the United States and receives a rebate or remission of duties by reason of that exportation, then it is entitled to a drawback adjustment. *See* Appellant's Br. 20 (citing *Chevron*, 467 U.S. at 842–43). Here, because it is uncontested that Çayirova received duty drawbacks solely because of its exportation of the subject merchandise, Çayirova argues that it is entitled to duty drawbacks for its oil country tubular goods.

In determining if Commerce's threshold test is foreclosed by § 1677a(c)(1)(B), the court must first determine if the statute unambiguously addresses whether the duty drawback adjustment is only available to offset duties on potential inputs for the subject merchandise. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether [Commerce's interpretation] is based on a permissible construction of the statute." *Id.* at 843; *see also Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1380 (Fed. Cir. 2001) ("[We] afford *Chevron* deference to Commerce's interpretations of ambiguous statutory terms articulated in the course of Commerce's antidumping determinations.").

Section 1677a(c)(1)(B) neither endorses nor prohibits Commerce's view that duty drawback adjustments are only available to offset duties on goods that are suitable for use as inputs for the subject merchandise. The statutory text emphasizes that duty drawback adjustments are allowed only when import duties are rebated or not collected "by reason of the exportation of the subject merchandise to the United States." 19 U.S.C. § 1677a(c)(1)(B). This language signals that Congress intended Commerce to grant duty drawback adjustments only when there is some kind of connection between the nonpayment of import duties and the exportation of the

subject merchandise to the United States. But the statute does not specify whether Commerce should or should not grant an adjustment for the nonpayment of import duties on materials incapable of producing the merchandise exported to the United States.

Çayirova argues that this court already concluded, in *Saha Thai*, that the statute is unambiguous and thus not subject to Commerce's interpretation. Appellant's Br. 23. In that case, we addressed whether "Commerce may only increase [the export value] when import duties are imposed by the country of exportation and then later rebated" as opposed to when those "import duties have not been collected" in the first place. *Saha Thai*, 635 F.3d at 1340 (internal quotation marks omitted). On that specific issue, we explained that "the statute defines a plain and simple rule: a duty drawback adjustment shall be granted when, but for the exportation of the subject merchandise to the United States, the manufacturer would have shouldered the cost of an import duty." *Id.* at 1341. But *Saha Thai* did not address the specific issue presented in this case, i.e., whether duty drawback adjustments are only available to offset duties on goods that are suitable for use as inputs for the subject merchandise. The inquiry under *Chevron* is whether the "the statute is silent or ambiguous with respect to *the specific issue* . . . ." 467 U.S. at 843 (emphasis added). The court has never concluded that the statute is unambiguous with respect to this issue. Because § 1677a(c)(1)(B) is silent with respect to this specific issue, we next consider whether Commerce's interpretation of the statute is reasonable. We conclude that it is.

The antidumping statutes generally "seek to produce a fair 'apples-to-apples' comparison between foreign market value and United States price." *Torrington Co. v. United States*, 68 F.3d 1347, 1352 (Fed. Cir. 1995). "[T]o achieve that end, the statutes and Commerce Department regulations call for adjustments to the base value of both

foreign market value and United States price to permit comparison of the two prices at a similar point in the chain of commerce." *Id.* In *Saha Thai*, we explained that to produce this apples-to-apples comparison, "if a foreign country would normally impose an import duty on *an input* used to manufacture the subject merchandise, but offers a rebate or exemption from the duty if *the input* is exported to the United States, then Commerce will increase [the export price] to account for the rebated or unpaid import duty (the 'duty drawback')." 635 F.3d at 1338 (emphases added). We thus explicitly endorsed Commerce's interpretation that duty drawbacks are only available for potential inputs of the subject merchandise.

Further, as Commerce recognized, "adjusting the export price . . . for an expense that is not associated with the production of subject merchandise . . . is contrary to statutory goal of accounting for subject merchandise-related items." J.A. 51. In other words, allowing for duty drawbacks for goods unrelated to the subject merchandise contravenes the statutory goal of making apples-to-apples comparisons between foreign and United States prices. Ultimately, Commerce's interpretation was entirely reasonable and its denial of Çayirova's duty drawback adjustment was proper.

In sum, we conclude that 19 U.S.C. § 1677a(c)(1)(B) is silent with respect to the specific issue of whether duty drawback adjustments are only available to offset duties on potential inputs for subject merchandise. We further conclude that Commerce's interpretation of § 1677a(c)(1)(B) was reasonable and that Commerce properly concluded that Çayirova was not entitled to a duty drawback for its oil country tubular goods. Accordingly, the Trade Court's decision sustaining Commerce's final results is affirmed.

**AFFIRMED**